**Gary Lynn HARDEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–81–00115 CR.**

Court of Appeals of Texas, Dallas.

Dec. 30, 1981.

Steven Halsey, Dallas, for appellant.

Karen Chilton Beverly, Asst. Dist. Atty., Dallas, for appellee.

Before GUITTARD, C. J., and WHITHAM and GUILLOT, JJ.

WHITHAM, Justice.

This is an appeal from a conviction for murder in which the jury assessed appellant's punishment at life imprisonment in the Texas Department of Corrections. We affirm.

Appellant asserts as grounds of error that the trial court erred (1) in overruling appellant's objection to the admission of evidence of an extraneous offense, (2) in denying appellant's motion for mistrial because of the prosecutor's reference to the parole law, and (3) in denying appellant's motion for mistrial because of the prosecutor's reference to defendant's failure to testify.

Although appellant does not question the sufficiency of the evidence, in view of appellant's first ground of error a recitation of the facts is required. Appellant did not testify at either phase of the trial.

At about 10:30 p. m., on the night of July 23, 1978, K_____ and G_____ M_____, husband and wife, along with a woman friend, K_____ R_____, were walking back from a nearby hotel to a church where the husband was employed. The church was about two blocks from the hotel. As they walked into a building in the church complex, appellant entered right behind them. Mr. and Mrs. M_____ and K_____ R_____ then got on an elevator taking them up to Mr. M_____'s office and appellant got on with them. As they arrived at their floor and proceeded to get off of the elevator, appellant asked them where the security office was and they told him. Mr. M_____ then unlocked the door both to the outer office and his inner office. As they were entering the outer office, appellant, still in the elevator, again inquired about the security office and again was told where it was located.

Mr. M_____ then went into his office to use the restroom and Mrs. M_____ followed inside the inner office while K_____ R_____ waited in the outer office. Soon thereafter, K_____ R_____ knocked on the inner office door, and when Mrs.

M_____ opened the door, appellant suddenly stuck a gun at her, and told her and K_____ R_____ to step back inside. When Mr. M_____ came out of the bathroom, appellant herded the three of them into M_____'s office. Appellant took Mr. M_____'s watch and about $90.00 from K_____ R_____'s purse. Appellant had them to take off their clothes, and after placing K_____ R_____ and Mr. M_____ in a closet, proceeded to rape Mrs. M_____. When he finished, appellant ordered Mrs. M_____ into the closet with the other two. They later heard the door shut, and after about twenty seconds, the three got out of the closet and called the security guard and police. Mrs. M_____ indicated that she thought appellant left them about 11:00 p. m.

Mickey and Patricia Walker arrived at the same hotel about 7:30 p. m. on the same evening to attend a convention. About 11:00 p. m. they left a reception and walked to their car which was parked behind the hotel. When they got to the car, Mr. Walker unlocked his door and reached across to unlock the door for Mrs. Walker. Suddenly appellant appeared, kneeling down beside her with a gun and said "Give me all your money." After they told him they did not have any, he asked how much gas they had. They replied that they had half a tank. Appellant then got in the car saying, "Then you can take me somewhere." They then drove off, with appellant giving directions. Eventually, appellant led them to an apartment parking lot. When the car was stopped he had the Walkers put their money on the dashboard and ordered both of them into the back seat. After grabbing the money and items of jewelry which Mrs. Walker had dropped on the floor of the car and Mr. Walker had picked up and was holding in his hand, he shot both of them, killing Mr. Walker.

Soon thereafter, Carl Allen was walking to his car after work, about two blocks from where the murder took place, when he was confronted by appellant. Appellant pointed a gun at him and told him to get in his car. The motor of Allen's car was running and Allen was able to jump in his car and drive off. Allen further testified that he was able to ascertain that appellant had been running.

## THE EXTRANEOUS OFFENSES

Appellant contends that the evidence of the extraneous offenses committed by him immediately prior to the instant offense was inadmissible. We disagree. The trial court admitted the extraneous offenses committed prior to the murder on the theory of a continuing criminal episode and on the theory of motive and so charged the jury. There is no contention in this appeal about the admission of evidence of the extraneous offense committed by the appellant after the murder.

One of the exceptions to the general rule that an accused is entitled to be tried on the accusation made in the State's pleading and not for some collateral crime or for being a criminal generally is that evidence showing a motive is admissible even though it also shows the commission of an extraneous offense. *Barefoot v. State*, 596 S.W.2d 875 (Tex.Cr.App.1980). In *Barefoot* the accused was convicted of murdering a police officer. He complained of the admission of evidence of numerous offenses in New Mexico where he had escaped from jail and was wanted on an arrest warrant, arguing among other things that other evidence of motive was in the record. The court rejected this argument, holding that the fact that appellant may have had other motives for killing the officer did not mean that he was not motivated by a desire to avoid his return to New Mexico.

In the present case the extraneous offenses were committed minutes before the abduction and resulting robbery-murder of Mickey Walker. In addition, the abduction took place only two or three blocks from the site of the extraneous offenses. The extraneous offenses give rise to motive, one of the theories upon which they were admitted.

Appellant left Mr. and Mrs. M_____ and K_____ R_____ in a building of the

church where he had committed the offenses of aggravated robbery and aggravated rape. Appellant obviously desired to leave the location and escape capture for these prior offenses. Minutes later, he accosted Patricia and Mickey Walker in the parking lot of the hotel, which was a mere two blocks from the scene of the extraneous offenses. After asking about money, he then inquired as to how much gas was in the Walker car, and upon hearing it was half full ordered the Walkers to take him away from the scene. Clearly, the previous offenses produced the emotion of fear of being caught which caused appellant to abduct the Walkers. When he arrived at his destination, he attempted to complete his escape and prevent later identification by killing his abductees. Evidence of the extraneous offenses committed by appellant immediately prior to the instant offense was admissible to show that he was motivated by a desire to avoid arrest, identification and conviction for the prior offenses. *Barefoot, supra.* Appellant's first ground of error is overruled.

## JURY CONSIDERATION OF THE PAROLE LAW IN SETTING PUNISHMENT

■ During jury argument at the punishment stage the following occurred:

DEFENSE ATTORNEY: The prosecutor is going to ask you to put him away for the rest of his natural life and he is sixteen years old.

PROSECUTOR: Excuse me Judge. I will object to that. *We are going to ask for a life sentence.* That is a misstatement of the law.

THE COURT: Overrule your objection.

DEFENSE ATTORNEY: Your Honor, I object to the prosecutor's comment.

THE COURT: Sustained.

DEFENSE ATTORNEY: I will ask that the jury be instructed to disregard it.

THE COURT: They are so instructed.

DEFENSE ATTORNEY: I will move for a mistrial.

THE COURT: Overrule your motion. [Emphasis ours]

Appellant contends that the comment within the prosecutor's objection was reversible error because it urged the jury to consider the applicability of the parole law in setting punishment.

Appellant argues that a life sentence, by its very nature, cannot be discharged and that the only manner by which a life sentence does not mean confinement for the rest of the person's natural life is if an outside force, parole or pardon, intervenes. We disagree with appellant's contention. We hold that the comment within the prosecutor's objection did not urge the jury to consider the applicability of the parole law in setting punishment. Appellant's second ground of error is overruled.

## THE PREJUDICIAL JURY ARGUMENT

■ During the prosecutor's argument to the jury at the punishment stage the record reflects the following:

PROSECUTOR: During the course of this trial, have you seen any evidence at all of sorrow, of remorse—

MR. ACKELS: I object to that, Your Honor.

THE COURT: Sustain the objection. Get off of that.

MR. ACKELS: He is commenting—

THE COURT: I understand what he is doing. The jury is instructed to disregard that line of argument.

MR. ACKELS: We respectfully move for a mistrial.

THE COURT: Overrule your motion for a mistrial.

The appellant asserts as a ground of error that the trial court committed error in denying appellant's motion for mistrial in that the argument complained of was so prejudicial as to deprive appellant of a fair trial. The appellant's sole contention under that ground of error is that the prosecutor's jury argument is a comment on the failure of appellant to testify.

In the context argued by the appellant we are confronted by at least three opinions of the Court of Criminal Appeals that require our consideration.

First, in *McMahon v. State*, 582 S.W.2d 786 (Tex.Cr.App.1978) the prosecutor at the punishment phase argued "Have you seen any remorse? Have you seen any remorse on the part of the defendants?" In disposing of the accuseds' complaint that such remarks were a comment on their failure to testify, the court stated:

> In reviewing the prosecutor's argument as a whole, moreover, we do not agree that it constituted an improper comment on the appellants' failure to testify. In *Nowlin v. State*, 507 S.W.2d 534 (Tex.Cr. App.1974), this Court stated that before a prosecutor's argument may be so construed the language used must be viewed from the jury's standpoint and the implication that the language refers to the defendant's failure to testify must be a necessary one. It is not sufficient that the language might be construed as an implied or indirect allusion. If the prosecutor's remarks may be reasonably construed as referring to the defendant's failure to present evidence through a witness other than himself, reversal is not required. (citations omitted).

Second, in *Overstreet v. State*, 470 S.W.2d 653 (Tex.Cr.App.1971) the prosecutor at the punishment phase argued:

> Last of all, punishment is to rehabilitate the Defendant if you can rehabilitate them. When you think about rehabilitation, you, you think about the first great step to rehabilitation is stepping forward and confessing one's guilt and being ready to take the punishment that is doled out.

There the appellant objected that such an argument was a direct reference to the appellant's failure to testify at the guilt or innocence phase in that it calls for a confession. The court, while commenting that the argument is not commended, perceived no reversible error.

In the third and most recent case, *Johnson v. State,* 611 S.W.2d 649 (Tex.Cr.App. 1981) the prosecutor at the punishment phase argued:

> And another important thing in this ladies and gentlemen is that you never heard Tommy Johnson tell Mr. Houston or anybody else that he was sorry for what he did. He never up to now has said, "I am sorry I committed this robbery, I confess to it, and I want you to give me probation," you never heard him say that.

There the court concluded that the argument was so inflammatory that its prejudicial effect could not have been alleviated by an instruction to disregard and that the trial court erred in failing to grant a mistrial based upon the prosecutor commenting on appellant's failure to testify. In *Johnson* the Court of Criminal Appeals reversed the conviction for the remark.

*McMahon* was an *en banc* decision. The thrust of the jury argument complained of in *McMahon* was virtually identical to the argument in the present case; the absence of an expression of sorrow or remorse in this case as opposed to the absence of an expression of remorse alone in *McMahon.* In neither case was the defendant mentioned by name with respect to the absent expression of sorrow or remorse. *Johnson* was a panel decision. The complained of jury argument remarked on the absence of a statement of sorrow from the defendant himself, and actually named the accused. In *McMahon* the *en banc* court repeated a familiar holding in cases where the defendant fails to testify that if the prosecutor's remarks may be reasonably construed as referring to the defendant's failure to present evidence through a witness other than himself, reversal is not required.

In *Overstreet* the prosecutor remarked on the fact that the first great step to rehabilitation was to come forward and confess one's guilt. In that case the defendant was not mentioned by name as the person who did not confess. In finding no reversible error the court in *Overstreet* stated:

> A defendant in a criminal case under our laws has the right to enter a plea of not guilty and to file a motion for probation, and the fact he has exercised those rights should not be utilized against him. He need not plead guilty in order to be entitled to probation. Although the argu-

ment is not commended, we perceive no reversible error. The issues at stake were punishment and probation. The appellant had testified she desired probation though she disagreed with the guilty verdict and her counsel urged the jury to grant probation. The argument was made in response thereto.

In *Overstreet* the jury argument in question was in response to the defendant's own testimony seeking probation and denying guilt. In *Overstreet* the accused testified. In the instant case the defendant did not. Nor did the defendant testify in *McMahon* or *Johnson*.

Since *McMahon* is an *en banc* decision, and since its facts on the point in question are virtually identical to those of the present case and since the jury argument here complained of omits reference to the defendant himself we must follow *McMahon*. Therefore, we hold that the jury argument complained of does not constitute an improper comment on appellant's failure to testify. Appellant's third ground of error is overruled.

Affirmed.

## ADDENDUM

I join in the court's opinion affirming because, for the reasons stated therein, I am of the opinion that we should follow *McMahon* in disposing of appellant's third ground of error.

My dissent in this court's decision in *Thomas v. State*, 629 S.W.2d 112 (Tex. App.—Dallas 1981) was grounded on the facts of that case. Since in my view the facts in *Thomas* were remarkably similar to the facts of *Johnson*, I would have reversed the trial court's verdict in *Thomas*. In *Thomas* the prosecutor pointed at the accused while stating that the jury had not heard any evidence from the witnesses or appellant's attorney that appellant was sorry for what he had done. For the prosecutor to point at the accused when the remark was made is the same as referring to the accused by name as was the case in *Johnson*.

For the reasons that follow, I would hope that the Court of Criminal Appeals will reconcile conflicts I perceive in *McMahon, Overstreet* and *Johnson*, and in so doing adopt the approach taken in *Johnson* and thus reverse cases in which the prosecutor remarks on the defendant's lack of contrition.

Separate and apart from the contention that such jury argument is a comment on the failure of the accused to testify, I am of the opinion that such a jury argument is a denial of the right of an accused to maintain at all stages of his trial that he is not guilty. If the proper ground of error is asserted, I would reverse if such jury argument is made and no mistrial granted. No such ground of error was asserted in the present case.

When the prosecutor comments on the accused's lack of contrition, it should make no difference whether the prosecutor's remarks may be reasonably construed as referring to the defendant's failure to present evidence through witnesses other than himself. The only person who can step forward and confess is the accused—not some other witness on his behalf. The only person who can express sorrow and/or remorse within the actual meaning of such a jury argument is the accused—not some other witness on his behalf. It should make no difference whether reputation or character witnesses testify. It should make no difference whether the defendant himself is referred to in the argument complained of as was the case in *Johnson*. It should make no difference whether the prosecutor points to the defendant as he makes the argument. It should make no difference whether defendant's witnesses or attorney state that the defendant is sorry for what he has done. Once the jury's attention is called to the absence of sorrow, remorse, regret or any other act of contrition, it defies logic and common sense to believe that the remark refers to any person other than the defendant.

The right to plead not guilty and to maintain that position is basic to our criminal

justice system. An accused has the right to plead "not guilty" and to maintain that position to whatever the bitter end for him might be. An accused has the right to seek probation. A prosecutor's argument such as that in the present case calls for the jury, in assessing punishment, or in determining probation, to consider appellant's failure to take the witness stand and say he is sorry or has remorse for the crime or present witnesses who will testify that the defendant is sorry or has remorse for the crime. As a practical matter, in either event, the argument calls for the jury to punish the defendant more severely, or deny probation, because he will not withdraw his "not guilty" plea and confess and plead "guilty." To admit to sorrow or remorse is but an admission of guilt within the context of the issue discussed here.

To place a defendant who has plead "not guilty", but who has been found "guilty", in the position of having to recant, confess, express sorrow, regret or remorse in order to obtain the jury's sympathy for probation or a less severe sentence is a denial of the right of an accused to insist at all stages of his trial that he is "not guilty."

Our system gives great deference to the accused's plea of not guilty. For example, when a defendant refuses to plead to the indictment the court enters a plea of not guilty for him. *Weddle v. State*, 522 S.W.2d 475 (Tex.Cr.App.1975). The effect of a plea of not guilty is to put the state on proof of the guilt of the accused by evidence beyond a reasonable doubt. When a plea is changed from not guilty to nolo contendere or guilty, the jury should be retired and defendant admonished concerning the consequences of his plea. *Crawford v. State*, 466 S.W.2d 319 (Tex.Cr.App.1971). A trial court erred in allowing defendant to withdraw his plea of not guilty and plead guilty after hearing witnesses testify that defendant was of unsound mind and should have proceeded under the original plea and instructed jury on law regarding insanity. *Gardner v. State*, 140 Tex.Cr.R. 227, 144 S.W.2d 284 (Tex.Cr.App.1940). Given this deference to an accused's plea of not guilty, the prosecutor in jury argument at the pun-ishment stage should not be permitted to make the argument here in question or any argument of that nature. Upon proper ground of error, reversal should follow if such argument is made and no mistrial granted.

If the defendant wishes to take the witness stand and say he is sorry or show remorse in order to obtain the jury's sympathy for probation or a lesser sentence, that is his choice. But for the state to argue in the manner in question in the present case is tantamount to a jury argument that a failure to change the plea to "guilty" should be considered by the jury in imposing the penalty or determining probation. Such an argument should be reversible error.

In my view, the manner of jury argument complained of in the present case should not fall within the scope of the rule that if the prosecutor's remarks may be reasonably construed as referring to the defendant's failure to present evidence through a witness other than himself, reversal is not required. Rather, it is my view that such an argument is so prejudicial as to deprive appellant of a fair trial and upon proper ground of error should be reversible error separate and apart from the contention that such argument is a comment on the failure of the accused to testify.

As pointed out in *Overstreet* the defendant has a right to plead not guilty and to file a motion for probation. The fact that he has asserted that right should not be utilized against him. However, by perceiving no reversible error because the argument made was in response to the defendant's testimony seeking probation, the court in *Overstreet* permitted the right to plead not guilty to be utilized against him. Given the defendant's right to plead not guilty and to file a motion for probation, the argument should be reversible error, regardless of whether the defendant does or does not testify at either stage of trial. To hold otherwise is to utilize the accused's rights against him and to adversely qualify his

right to plead not guilty and to file a motion for probation.

GUITTARD, C. J., and GUILLOT, J., do not join in the addendum.